UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JESSE JAMES DELEBREAU,

    Plaintiff,

    v.                                          Case No. 25-cv-1355-bbc

KEWAUNEE COUNTY SHERIFF'S DEPARTMENT,

    Defendant.

---

**SCREENING ORDER**

---

    Plaintiff Jesse James Delebreau, who was incarcerated when he brought this action but has since been released, is representing himself in this 42 U.S.C. §1983 action. On October 16, 2025, the Court screened the complaint and after concluding the complaint failed to state a claim upon which relief could be granted, gave Delebreau the opportunity to file an amended complaint, which he did on November 6, 2025. This matter comes before the Court to screen the amended complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

    The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short

and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

## ALLEGATIONS OF THE AMENDED COMPLAINT

According to Delebreau, on one of the last few days of August 2022, Kewaunee County Sheriff's Department Officers Kuehl and Tuddel arrived at his father's house and informed his father that they had a probation and parole warrant for Delebreau's arrest. Delebreau asserts that his father "didn't really want" the officers in the house, but the officers allegedly "manipulated him into thinking they had a search warrant and not a probation and parol[e] warr[a]nt." Delebreau explains that "after [he] came out of [the] bedroom and was placed under arrest Officer Kuehl went back to [the] bedroom and yelled I'm going to search and I'm using ACT 79."[1] According to Delebreau, ACT 79 did not apply because he was on probation for a misdemeanor, not a felony.[2] Officer Kuehl allegedly said he was using ACT 79 because he had seen "meth in plain birds eye view."

Delebreau asserts that, when Officer Kuehl testified to secure a warrant to search Delebreau's father's house, Officer Kuehl denied invoking ACT 79. He stated only that he had observed guns and meth. Delebreau asserts that a judge then issued an illegal arrest warrant. After the warrant issued and Delebreau's father's house was thoroughly searched, officers allegedly

---

[1] Under 2013 Wisconsin ACT 79, "A person released under this section, his or her residence, and any property under his or her control may be searched by a law enforcement officer at any time during his or her period of supervision if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision."

[2] According to publicly available court records, Delebreau was on extended supervision in connection with his conviction in Brown County Case *Wisconsin v. Delebreau*, 2017CT0348. A revocation order and warrant were entered on September 7, 2022, and his probation was revoked on September 20, 2022.

found nothing illegal. Delebreau further explains that, later, at a motion hearing, it was revealed that the "meth" Officer Kuehl allegedly saw in plain sight was only a bag of cotton balls and that the guns were legally owned by Delebreau's father. Delebreau states that the charges against him were dismissed.[3] He also states that Officers Kuehl and Tuddel "both p[e]rjured themselves on the stand during the motion hearing several times," although Delebreau does not explain how. He states this was a conspiracy to put an "illegal case on [him] and illegal charges [he is] not guilty of."

Delebreau further explains that he "ended up getting revoked on his probation and sitting 8 months which [he] should have never had to sit." Delebreau does not explain the circumstances or basis of his revocation. It is unknown what case he was on extended supervision for, and it is unclear if he was revoked based on the circumstances that gave rise to the arrest warrant that Officers Kuehl and Tuddel executed or based on circumstances that arose after the execution of the arrest warrant.

## ANALYSIS

Delebreau names the Kewaunee County Sheriff's Department, which is not a suable entity under §1983, *see Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004), as the only Defendant in this action; however, the complaint's allegations focus almost exclusively on the actions of Officers Kuehl and Tuddel. Delebreau first asserts that Officers Kuehl and Tuddel violated his constitutional rights in late August 2022 when they arrested him pursuant to a probation and parole arrest warrant and then searched his father's house after invoking ACT 79, which Delebreau asserts did not apply to him. Delebreau asserts that Officer Kuehl stated he was

---

[3] According to publicly available court records, a complaint charging Delebreau, in part, with possession of methamphetamines and possession of firearms was filed in Kewaunee County Case *Wisconsin v. Delebreau*, 2022CF0101 on December 15, 2022, nearly three months after Delebreau's supervised release had been revoked. The case was dismissed on December 4, 2023.

3

conducting a search under ACT 79 "because he saw meth in plain birds eye view." He then asserts that Officer Kuehl listed the so-called meth and guns in an application for a search warrant, which was later approved by a judge. The search apparently turned up no illegal items.

Even assuming Officer Kuehl referenced ACT 79 after arresting Delebreau, based on the alleged chronology of events, the Court cannot reasonably infer that he violated Delebreau's Fourth Amendment rights. It has long been held that "[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming there is probable cause to associate the property with criminal activity" and assuming "the officer's access to an object has some prior justification under the Fourth Amendment." *Texas v. Brown*, 460 U.S. 730, 738-39 (1983). Delebreau's father allowed the officers to enter his home, albeit reluctantly, so they had legal justification to be there. The officers then legally arrested Delebreau pursuant to a probation and parole warrant. In the course of arresting Delebreau, the officers apparently saw guns and what they believed to be a bag containing meth. The officers, who did not know at that time who the guns belonged to, had probable cause to believe the guns were associated with criminal activity because Delebreau is a convicted felon who is not allowed to possess firearms. The officers also had probable cause to believe that the bag of "meth" was associated with criminal activity. Accordingly, because the officers were in the home legally and because Officer Kuehl saw the guns and "meth" in plain sight, Officer Kuehl's seizure of the guns and "meth" did not run afoul of Delebreau's Fourth Amendment rights.

Moreover, Delebreau explains that, rather than conducting a search of the home at the time of his arrest, Officer Kuehl applied for a search warrant, noting that he saw guns and "meth" in plain sight during Delebreau's arrest. A judge found Officer Kuehl's discovery of these items to be sufficient to support probable cause for the issuance of a search warrant. According to

4

Delebreau, Officer Kuehl committed perjury and the warrant was "illegal." Delebreau does not allege what he believes Officer Kuehl misrepresented, but he appears to take issue with the fact that the "meth" Officer Kuehl observed turned out to be nothing more than a bag of cotton balls. The Court understands Delebreau's frustration at having to defend himself against charges that were ultimately proven to be meritless, but Officer Kuehl being mistaken about what he believed he saw does not equate to a lie. Moreover, the complaint contains no factual allegations suggesting that Officer Kuehl knew that the bag contained nothing more than cotton balls. In any event, the search was legally conducted pursuant to a warrant, making Officer Kuehl's alleged invocation of ACT 79 irrelevant because Officer Kuehl did not rely on ACT 79 for the authority to conduct the search. Delebreau therefore fails to state a claim against Officers Kuehl or Tuddel based on the seizure of the "meth" and guns or based on the subsequent search.

Delebreau also fails to state a claim based on allegations that officers committed perjury while testifying at various pretrial proceedings. The Seventh Circuit has held that officers enjoy absolute immunity from §1983 liability for testimony given at a preliminary hearing and at hearings on motions to quash arrests or to suppress evidence. *Curtis v. Bembenek*, 48 F.3d 281, 283-85 (7th Cir. 1995). Finally, Delebreau fails to state a claim based on allegations that he sat in jail for eight months after being revoked. Delebreau's allegations regarding the revocation of his extended supervision are too vague for the Court to infer that his constitutional rights were violated, let alone that they were violated by Officers Kuehl or Tuddel. According to Delebreau, he was arrested pursuant to a warrant, which means that probable cause to believe Delebreau had violated the terms of his release existed *before* Officers Kuehl and Tuddel had contact with him. Delebreau does not explain any of the circumstances regarding his revocation, and the Court will not speculate whether Officers Kuehl and Tuddel had any involvement in the revocation, which

occurred months prior to Delebreau being charged with the possession of methamphetamines and guns. In any event, as explained above, Delebreau fails to state a Fourth Amendment claim against Officers Kuehl and Tuddel based on their actions on the day of his arrest.

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that copies of this order be emailed to DLSFedOrdersEastCL@doj.state.wi.us.

Dated at Green Bay, Wisconsin this 18th day of November, 2025.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.